UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TONIA SLOAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:10CV00713 AGF |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Tonia Sloan was not disabled and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, the decision of the Commissioner shall be affirmed.

Plaintiff, who was born on April 8, 1969, filed her applications for benefits on May 17, 2006, at the age of 37, asserting a disability onset date of September 17, 2005, due to back and neck pain and Crohn's disease. (Tr. 96.) After Plaintiff's applications were denied at the initial administrative level, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and such a hearing was held on June 25, 2008. By decision dated July 21, 2008, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform her past work as a secretary, and was thus not disabled

under the Act. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on March 26, 2010. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record. Specifically, Plaintiff argues that the ALJ improperly determined that Plaintiff's migraines, irritable bowel syndrome, and depression/anxiety were not severe impairments, resulting in a flawed finding of Plaintiff's RFC. In addition, Plaintiff asserts that the ALJ's RFC findings are not supported by medical evidence. Plaintiff asks that the ALJ's decision be reversed.

## BACKGROUND

### Work History

The record indicates that Plaintiff worked as a clerk and assistant manager in a video store, a secretary, a produce stocker at a grocery store, and a group leader at a juvenile detention facility. (Tr. 97).

### Medical Record

Plaintiff presented to the emergency room on September 9, 2004, following a motor vehicle accident, in which she injured her neck and lower back. She was diagnosed with cervical spine strain and discharged. (Tr. 137-43.) Plaintiff was seen by Stanley London, M.D., on October 8, 2004, complaining of depression/weeping spells,

2

dizziness, fatigue, headaches, insomnia, muscle jerking, ringing in her ears, and a stiff neck.  (Tr. 184.)

Diagnostic tests from November 15, 2004, to August 11, 2005 revealed degenerative disc disease at C5-6 of Plaintiff's cervical spine, and at L3-4, L4-5, and L5-S1 of her lumbar spine, and a 2-3mm central bulging disc at C4-5.  (Tr. 151, 160-62, 212, 217-19.)  On September 19, 2005, Plaintiff underwent an "anterior discectomy and instrumented interbody fusion at C4-5 and C5-6," performed by Dr. George Schoedinger. (Tr. 229, 354.)  Dr. Schoedinger prescribed Darvocet and instructed Plaintiff to remain off work.  (Tr. 352.)  On November 29, 2005, Dr. Schoedinger released Plaintiff to work as a group leader at the detention center, without restriction.  (Tr. 525.)

On December 13, 2005, Plaintiff established care with Brenda Buckley, M.D., who became Plaintiff's primary care physician.  Dr. Buckley diagnosed Plaintiff with depression/anxiety, hematochezia (bloody stool), migraines, and asthma/sinusitis, and prescribed Zoloft, Relpax (migraines), Albuterol, and Singulair.  (Tr. 547.)  On December 30, 2005, Plaintiff was admitted to the hospital with complaints of intermittent hematochezia and lower abdominal pain.  Biopsies from Plaintiff's colon were consistent with a diagnosis of Crohn's disease.  (Tr. 480, 451.)

On January 9, 2006, Plaintiff informed Dr. Schoedinger that she had not been working and he instructed Plaintiff to "remain off work." (Tr. 496.)  A January 11, 2006 MRI of Plaintiff's cervical spine revealed anterior discectomy and interbody fusion at C4-5 and C5-6 with no evidence of acute inflammatory process or significant intrusion on the

3

anterior thecal sac. (Tr. 471.)

On January 12, 2006, Dr. Dimitroff wrote a letter "To Whom It May Concern" that despite Plaintiff's Crohn's, she should be able to perform her work responsibilities without any limitations, but that any periodic absences from work should be considered medically necessary. (Tr. 479.)

On January 16, 2006, Dr. Buckley decreased the dosage of Plaintiff's Zoloft, and continued Plaintiff's prescription medications noting Plaintiff's report that the Relpax worked "really well" for her migraines. (Tr. 547.)

On January 24, 2006, Plaintiff saw Ashok Kumar, M.D., upon reference by Dr. Schoedinger for further treatment for her neck and left upper extremity symptoms. Plaintiff reported that "the surgery helped her tremendously with her neck pain," but that she had some residual posterior neck discomfort and pain around the trapezius region. Plaintiff reported that these symptoms were worse when she moved her head to look down, and that standing and walking also bothered her. She also complained of left upper extremity numbness. Examination indicated some tenderness and mildly decreased range of motion in Plaintiff's cervical spine, but noted no sensory or major strength deficits in the upper extremities. Dr. Kumar assessed probable myofascial neck pain and poor posture and possible left ulnar neuropathy. He prescribed Norflex (a muscle relaxer) and physical therapy, and noted that Plaintiff had no work restrictions. (Tr. 492-94.) A nerve conduction study and EMG performed on January 30, 2006, was normal. (Tr. 523-24.)

4

Physical therapy treatment notes from February 2006 indicated improvement in Plaintiff's cervical range of motion, but that further treatment would be beneficial. (Tr. 526.) On February 20, 2006, Plaintiff told Dr. Kumar that physical therapy and muscle relaxants were "helping her quite a bit." She reported occasional numbness in her left arm, but denied any major symptoms or weakness. Examination revealed some mild tenderness on the left side of Plaintiff's neck, but her range of motion was just mildly decreased. Dr. Kumar again stated that Plaintiff had no work restrictions. (Tr. 490.)

That same day, Plaintiff saw Dr. Buckley, who noted that Plaintiff's depression had improved and she was "doing well" on her medication. Plaintiff also stated that her inflammatory bowel disease was better. (Tr. 545.) An examination by Dr. Schoedinger on February 27, 2006, indicated normal reflexes and no sensory loss or motor weakness. Dr. Schoedinger stated that Plaintiff should continue to maintain "as high a level of activity as she finds possible." (Tr. 489-90.)

On May 22, 2006, Plaintiff told Dr. Buckley that she had experienced more diarrhea the past few days, and reported that Prozac was helping her depression. Dr. Buckley prescribed Prozac, Imitrex, Albuterol, Singulair, Asacol, and Prednisone. (Tr. 543-45, 590-92.)

The record includes an undated Physical RFC Assessment prepared by an unidentified individual. The Assessment, which was based upon a review of records, designates Plaintiff's primary diagnosis as Crohn's disease, with a secondary diagnosis of degenerative disc disease. According to this Assessment, Plaintiff had the RFC to lift or

5

carry 20 pounds occasionally, lift or carry 10 pounds frequently, stand or walk six hours in an eight-hour workday, and sit (with normal breaks) six hours in an eight-hour workday. She could only occasionally climb, balance, stoop, kneel, crouch or crawl, and had to avoid concentrated exposure to fumes and dust. (Tr. 560-65.)

On June 29, 2006, a non-examining state consulting psychologist, J. McGee, Ph.D., completed a Psychiatric Review Technique form on which she assessed Plaintiff's alleged affective and anxiety-related disorders as non-severe. The only noted functional limitation was a mild restriction of activities of daily living. Dr. McGee considered Plaintiff's allegations of depression and anxiety as "partially credible." (Tr. 566-78.)

On July 12, 2006, Plaintiff saw Dr. Buckley who prescribed Asacol, Prozac, Imitrex, and Neurontin. (Tr. 609.) On August 25, 2006, Dr. Buckley completed a Physician's Report for Plaintiff's long term disability insurer. Dr. Buckley opined that Plaintiff could sit continuously (67-100 percent of the day); stand, walk, balance, and reach at shoulder level frequently (34-66 percent); and bend, stoop, kneel, crawl, walk on uneven surface, climb, and reach above shoulder level occasionally (1-33 percent). She opined that Plaintiff could occasionally lift and carry 11 to 20 pounds. She stated that Plaintiff could not return to work, and would be re-evaluated in six months. (Tr. 607-09.)

On January 25, 2007, Plaintiff complained to David Costigan, M.D., of problems with diarrhea, mucous in stool, and bloody stool such that she had to stay close to a bathroom. She also complained of a 50-pound weight gain in the past year. Plaintiff had been taking Asacol, Neurontin, Vytorin, Prozac, Flexeril, Albuterol, Nasonex, and

6

Imitrex. Addressing Plaintiff's weight gain and "possible low-grade depression," Dr. Costigan advised Plaintiff to begin water aerobics and cut down on Flexeril. (Tr. 582-88.) On March 22, 2007, Plaintiff reported feeling depressed and anxious, and Dr. Buckley increased Plaintiff's Zoloft dosage. (Tr. 591.)

On May 24, 2007, Plaintiff told Dr. Costigan that her diarrhea "comes and goes." Testing revealed that her colon was "completely normal." Plaintiff was prescribed Asacol, Zoloft, Maxalt, Albuterol, Nasonex, Vytorin, and Baclofen. (Tr. 583.) In a letter to Dr. Buckley, Dr. Costigan stated that there was no sign of Crohn's but that the mucous problem was related to irritable bowel syndrome. (Tr. 583-84.)

On June 26, 2007, Plaintiff was admitted to the hospital with pneumonia, asthmatic exacerbation, Crohn's disease, and hypoxia. Plaintiff was prescribed numerous medications, including Zoloft, and was advised to follow up with Dr. Buckley. (Tr. 593-94.)

On November 15, 2007, Dr. Buckley diagnosed Plaintiff with asthma, prescribed Prednisone, Advair, and Albuterol, and noted that if there was no improvement, a referral to a pulmonologist would be made. (Tr. 595.) On August 24, 2007, Dr. Buckley completed another Physician's Report for Plaintiff's long term disability insurer. The report indicated that Plaintiff's condition was unchanged since the prior insurance report of August 25, 2006. Dr. Buckley stated that Plaintiff could not stand for prolonged periods, or bend, stoop, or perform heavy lifting. (Tr. 610.)

On February 13 and March 11, 2008, Plaintiff complained to Dr. Buckley about

7

breathing difficulty, for which Dr. Buckley prescribed various medications. (Tr. 615, 619-22.) Plaintiff saw a neurologist on April 7, 2008 and June 6, 2008, complaining of back pain with radiation into her arms. She also stated that she had migraines two to three times per week. The record notes that prior testing did not reveal myelopathy, radiculopathy, or neuropathy. Plaintiff was diagnosed as having musculoskeletal neck pain without evidence of radiculopathy, and was prescribed medication for pain and headaches. (Tr. 623-28.)

On May 13, 2008, following a Pulmonary Function test which indicated some below normal readings, Dr. Buckley assessed acute bronchitis, asthma exacerbation, and nicotine addiction. She prescribed various medications and recommended that Plaintiff stop smoking. (Tr. 616-17.)

**Evidentiary Hearing of June 25, 2008** (Tr. 22-39)

Plaintiff, who was represented by counsel, testified that she was 39 years old, and had spent three years in college, receiving an Associates degree in criminal justice and human services. She reviewed her work history and testified that in 2006 she left her most recent job as a group leader for the Division of Youth Services because, due to injuries from the 2005 car accident, she could no longer perform her duties.

Plaintiff testified she still had tightness and pain in her neck after her neck surgery in September 2005 due to the car accident. She testified that she had pain in her mid to low back and had trouble bending over, standing, walking, and sitting for "long periods" of time. She stated that she had both Crohn's and irritable bowel syndrome, and was

8

taking medication for both.

Plaintiff testified that she weighed 198 pounds, which was up significantly from her normal weight, due to her medications and inactivity because of pain. Plaintiff also suffered from severe asthma. She smoked two to three cigarettes a day, and acknowledged that she was told at a pulmonary function study in April of 2008 that some of the findings would be reversible if she would quit.

Plaintiff testified that she experienced depression, which was being treated by her primary care provider. She cried a lot and was embarrassed about her situation and inability to do things herself. She had not been referred to a psychologist or a psychiatrist.

Plaintiff testified that she could only sit or stand for 10 to 15 minutes before having to shift positions, and could only shift two or three times before having to lay down. She estimated that she spent 10 to 12 hours a day laying down. Her children had to wash her hair and help her get dressed, as she had pain when she lifted her arms. Plaintiff testified that she would forward flex her neck to reduce pain, and no longer drove because she had trouble turning her head to see. She was never without neck pain, and the September 2005 surgery only made the pain worse. She testified she was unable to open jars and windows or even carry a purse.

Plaintiff testified that she had migraine headaches two to three times a week. She took Maxalt for them and had to lay down for three to four hours in a darkened room. Plaintiff took Prednisone for her Crohn's, alternating off and on every few weeks.

9

During the periods when she was off the Prednisone, Plaintiff testified that she would cramp and occasionally have blood in her stool. Plaintiff testified that she would "live in the bathroom" during those times, unable to go out in public because it was too embarrassing.

The ALJ asked the VE to consider an individual of Plaintiff's age, education, and work experience, who could lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand or walk for six hours out of eight hours; sit for six hours out of eight; occasionally climb stairs and ramps; and reach overhead, limited to no repetitive overhead lifting. The individual also had to avoid concentrated exposure to fumes, extreme cold, hazards of unprotected heights, and vibration. The VE testified that such an individual could do Plaintiff's past work as a secretary and group leader, but not as a video clerk because of the overhead work.

Plaintiff's attorney then asked the VE to consider a person subject to the restrictions and activities as described in Plaintiff's testimony (unable to sit, stand or walk for more than 10 to 15 minutes; needing to lay down for 10 to 12 hours a day; problems with bowel control as described; problems with migraine headaches requiring withdrawal to a dark room several times a week; and unable to use their arms out in front of them unless resting on a table). The VE testified that such a person would not be employable.

**ALJ's Decision of July 21, 2008** (Tr. 7-21)

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of September 17, 2005, and had the severe impairments

10

of disorders of the spine, moderate chronic obstructive pulmonary disease, and irritable bowel syndrome. The ALJ found that Plaintiff's depression/anxiety was non-severe, as the record showed only mild limitations to her activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation. In support of this conclusion, the ALJ noted that the record suggested that Plaintiff's mental health issues were successfully treated with medications, and she never required in-patient care, nor was she seen regularly by a psychiatrist or psychologist.

The ALJ found that none of the Plaintiff's impairments, individually or in combination, equaled a deemed-disabling impairment listed in the Commissioner's regulations.

The ALJ summarized the medical evidence and found that Plaintiff had the RFC to lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit, stand and/or walk (with usual breaks) for six hours in an eight-hour shift, and occasionally climb ramps and stairs; could not do repetitive overhead lifting or climb ropes, ladders, or scaffolds; and had to avoid concentrated exposure to extreme cold, vibration, fumes, and the hazards of unprotective heights.

The ALJ stated that in arriving at this RFC assessment, he relied on the inconsistency between Plaintiff's reporting of disability due to musculoskeletal impairment and the relatively unremarkable findings of musculoskeletal and neurological examinations conducted during the relevant period; the inconsistency between Plaintiff's reporting of disability due to gastrointestinal symptoms and her complaints to a treating

11

source of significant weight gain; the inconsistency between Plaintiff's reporting of disability due to respiratory impairment and the "moderate only" findings of pulmonary function testing; and the inconsistency between Plaintiff's testimony and the ALJ's observations of her at the hearing -- Plaintiff testified to an inability to sit comfortably for more than 15 minutes, but was observed to have sat for approximately 25 minutes at the hearing. The ALJ stated that he "considered the administrative findings of fact made by the State agency medical physicians and other consultants" and that he "weighed" these opinions "as non-examining expert sources."

The ALJ concluded that Plaintiff could perform her past relevant work as a secretary, which the Dictionary of Occupational Titles ("DOT") described as skilled sedentary work, and that she was therefore not disabled under the Social Security Act.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.'" *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (citation omitted). The court "'may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted); *see also Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (explaining that the concept of substantial evidence allows for the possibility of drawing

two inconsistent conclusions, and therefore, embodies a "zone of choice," within which the Commissioner may decide to grant or deny benefits without being subject to reversal by the reviewing court).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. The Commissioner's regulations define "severe impairment" as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 28 C.F.R. 404.1520(c). A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the

Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work.  If so, the claimant is not disabled.  If she cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors -- age, education, and work experience.  *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).

**ALJ's RFC Assessment**

Plaintiff argues that the ALJ improperly determined that Plaintiff's migraines, irritable bowel syndrome, and depression/anxiety were not severe impairments, resulting in a flawed finding of Plaintiff's RFC.

As noted above, "[a]n impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  The Court concludes that the ALJ's decision that Plaintiff's migraines, irritable bowel syndrome, and depression/anxiety were not severe impairments is supported by substantial medical evidence.  On January 16, 2006, Plaintiff reported that medication was working well for her migraines.  On January 12, 2006, Dr. Dimitroff stated that despite having Crohn's, Plaintiff should be able to perform her work responsibilities without any limitations.  And on May 24, 2007, testing showed her colon was completely normal, with no sign of Crohn's disease.

14

With respect to Plaintiff's allegations of mental impairment, which was not asserted in her applications for benefits, the ALJ's decision was supported by Dr. McGee's opinion of June 29, 2006 that Plaintiff did not have a severe mental impairment and by Plaintiff's testimony at the hearing that she was never referred to a psychologist. *See Page v. Astrue*, 484 F.3d 1040, 1043-44 (8th Cir. 2007) (concluding that ALJ's determination that claimant's psychological limitations were not severe was supported by substantial evidence, where among other things claimant did not allege mental impairment in her disability application); *Dixon v. Barnhart,* 353 F.3d 602, 605-06 (8th Cir. 2003) (concluding that ALJ's decision to discredit claimant's subjective complaints related to posttraumatic stress disorder was supported by substantial evidence, where the record showed no treatment for the condition other than prescription medications to alleviate anxiety and depression, and claimant did not see specialist or therapist).

Plaintiff also asserts that the ALJ's RFC findings are not supported by medical evidence. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). Here, the ALJ appears to have relied on the Physical RFC Assessment form referenced above, that is unsigned and undated. This form does not meet the substantial evidence standard. However, there is significant medical evidence in the record that supports the ALJ's assessment. On November 29, 2005, Dr. Schoedinger, Plaintiff's surgeon, released Plaintiff to return to work as a group leader

15

without restriction.  On January 24, and again on February 20, 2006, after an examination, Dr. Kumar stated that he placed no work restrictions on Plaintiff.  The Court believes that these explicit references by examining physicians satisfy the need for some medical evidence in support of the ALJ's physical RFC.  *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (finding that substantial evidence supported the ALJ's conclusion that the claimant had the RFC to perform light work, where medical records indicated that she suffered only mild degenerative changes in her back, even though the medical evidence was silent with regard to work-related restrictions such as the length of time she could sit, stand, and walk; as it was the claimant's burden to prove at step four that she could not perform her past relevant work, her "failure to provide medical evidence with this information should not be held against the ALJ when there is medical evidence that supports the ALJ's decision").

In sum, the Court concludes that the ALJ's RFC assessment is supported by evidence in the record as a whole.  While there may be evidence to support a contrary result, "[i]t is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted).  "'If, after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioners's findings, [the court] must affirm the denial of benefits.'" *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

Plaintiff's remaining argument challenging the validity of the hypothetical

16

question posed to the VE is without merit as the ALJ did not rely on the VE's testimony in concluding that Plaintiff could do her past work.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

                                                *[signature]*
                                                AUDREY G. FLEISSIG
                                                UNITED STATES DISTRICT JUDGE

Dated this 14th day of September, 2011.